**COMMONWEALTH of Kentucky, Appellant,**

v.

**Laterrence NEAL, Appellee.**

**No. 2000–CA–002744–MR.**

Court of Appeals of Kentucky.

March 29, 2002.

Discretionary Review Denied Oct. 9, 2002.

Albert B. Chandler, III, Attorney General, Teresa Young, Jeanne Anderson, Special Assistant Attorneys General, Frankfort, KY, for appellant.

Elizabeth B. McMahon, Louisville, KY, for appellee.

Before: DYCHE, JOHNSON and KNOPF, Judges.

### OPINION

JOHNSON, Judge.

The Commonwealth of Kentucky has brought this interlocutory appeal from an order entered by the Jefferson Circuit Court on October 24, 2000, which granted the appellee's motion to suppress evidence that was seized from his residence. Having concluded that the trial court has failed to make the necessary findings of fact to resolve this matter, we vacate the trial court's order suppressing the evidence and remand for additional findings of fact.

The underlying relevant facts of this case are not in dispute. On November 17, 1996, Officer Richard Pearson of the Louisville Police Department was assigned to serve an arrest warrant on Lawrence Neal. The warrant listed Lawrence as a 45 year old male, with an address at 713 East Jacob Street. Officer Pearson, armed and in police uniform, arrived at the Jacob Street residence at approximately 12:30 p.m. After knocking on a black, metal,

security door and receiving no answer, Officer Pearson then opened the security door and began knocking on an inner, white, wooden door. Officer Pearson testified that the inside door swung open 6 to 8 inches on its own, and once the door was open, he peeked through the crack and yelled "police" several times. Soon thereafter, Laterrence Neal, who was 20–years old at the time, came from one of the back rooms of the house into the front room and identified himself.

Officer Pearson asked Laterrence if he could step inside and speak with him, and Laterrence told the officer that he could. Officer Pearson testified at the suppression hearing that he told Laterrence that he was there to serve a "serious warrant"[1] on Lawrence Neal. The officer asked Laterrence if he had any identification and Laterrence stated that he did not. Even though Laterrence told the officer that he was alone in the house, Officer Pearson asked if he could look around. Laterrence agreed to walk through the house with the officer. Together, they briefly walked through the house and Officer Pearson did a cursory search.

Officer Pearson and Laterrence then returned to the living room in the front of the house. While in the living room, the officer observed a black and red jacket lying on a chair. He asked Laterrence if it was his jacket, and Laterrence said no. Officer Pearson then asked Laterrence if he could search the jacket, and Laterrence told him that he could. When the officer picked up the jacket, he noticed that there was something heavy in one of the pockets. Based upon his experience, the officer suspected the object was a gun. The officer then reached into the pocket of the black and red jacket and removed a paper sack which contained a .380 caliber semi-automatic pistol. The officer then realized that there were actually two jackets, with the sleeves of a yellow and black plaid jacket being inside the sleeves of the black and red jacket. Laterrence stated that the inner yellow and black plaid jacket was his and the officer asked if he could search that jacket. Laterrence said he could, and inside one of the pockets of the yellow and black plaid jacket Officer Pearson found an identification card belonging to Laterrence.

Officer Pearson testified that for safety purposes he then handcuffed Laterrence and requested backup. Once backup arrived at the house, the officers were able to locate Lawrence Neal hiding in a bathroom in the back of the house. Lawrence and Laterrence were arrested. Laterrence was charged with hindering apprehension in the first degree,[2] and transported to the county jail. While waiting in the "sally port" area of the jail, Laterrence admitted to Officer Pearson that he had been previously convicted of a felony. The officer then charged Laterrence with possession of a handgun by a convicted felon.[3]

At a preliminary hearing in the Jefferson District Court, no probable cause was found for charging Laterrence with hindering apprehension in the first degree, and the charge was dismissed. However, on January 8, 1997, the Jefferson County grand jury indicted Laterrence for possession of a handgun by a convicted felon. On March 25, 1997, Laterrence filed a motion to suppress any tangible evidence and all statements obtained by law enforcement in

---

1. The term "serious warrant" was not used by the trial court in its order. On remand, the trial court shall determine what weight, if any, to be given to this terminology in assessing the voluntariness of Laterrence's consent.

2. Kentucky Revised Statutes (KRS) 520.120.

3. KRS 527.040.

connection with the search. On December 9, 1997, the trial court conducted a suppression hearing. At the end of the hearing the trial court stated that it was very concerned about the case of *United States v. Litteral.*[4] The Commonwealth indicated that it wanted to prepare a memorandum to address *Litteral* and the trial court granted its request and gave it until December 19, 1997, to do so. On October 24, 2000, the trial court entered its written opinion and order granting the motion to suppress.[5] This appeal followed.

■■■ The United States Supreme Court has long recognized that there is a heightened privacy interest in a person's own residence and that the Fourth Amendment generally prohibits warrantless entry, whether to search for objects or to make an arrest. This general prohibition may be overcome by any of the valid exceptions to the warrant requirement, including consent to search, whether obtained from the individual who is the target of the search or from a third party who possesses common authority over the premises.[6] The burden of proof to show an exception rests with the government.[7]

■■■ An appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive.[8] Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.[9]

In its order granting suppression of the gun found during the search, the trial court relied upon *Bumper v. North Carolina,*[10] in reaching its conclusion of law that Laterrence's consent was invalid. The Commonwealth argues that *Bumper* is inapplicable because it involved a consent to search that was given only after the police made the statement that they had a valid search warrant, while in the case *sub judice* Officer Pearson made no claim to having a search warrant, but instead truthfully stated that he had a valid arrest warrant for Lawrence Neal.

In *Bumper,* four police officers went to a residence to investigate an assault and

**4.** 910 F.2d 547, 553–54 (9th Cir.1990). (Before the police can conduct a search of a dwelling pursuant to an arrest warrant: (1) the person named in the arrest warrant must be a co-resident of the dwelling searched; and (2) the police must have reasonable grounds for believing that the person named in the arrest warrant is present on the premises.)

**5.** The record is unclear as to why there was nearly a three-year gap between the suppression hearing and the written order granting the defense's motion, although it appears that it was due to Laterrence being charged with several other more serious but unrelated crimes. During this period of time, the present case was scheduled and continued for trial several times. Also, the suppression hearing was conducted by Judge Edwin A. Schroering, Jr., who retired, but the order

granting the motion to suppress was signed by Judge Tom McDonald, his successor.

**6.** *Colbert v. Commonwealth,* Ky., 43 S.W.3d 777, 779 (2001)(citing *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

**7.** *Id.* at 780 (citing *Gallman v. Commonwealth,* Ky., 578 S.W.2d 47, 48 (1979)).

**8.** Kentucky Rules of Criminal Procedure (RCr) 9.78.

**9.** *Adcock v. Commonwealth,* Ky., 967 S.W.2d 6, 8 (1998); *Commonwealth v. Opell,* Ky.App., 3 S.W.3d 747, 751 (1999).

**10.** 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

rape. The suspect, Bumper, was supposedly living with his grandmother, Mrs. Leath. The officers approached the door of Mrs. Leath's home and told her that they had a search warrant for her house. She responded, "Go ahead,". and opened the door. At the suppression hearing, the prosecution relied upon the consent of Mrs. Leath to justify a warrantless search.[11]

In holding that Mrs. Leath's consent to search was constitutionally invalid, the United States Supreme Court stated:

> When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority [footnotes omitted].

> When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent.[12]

We agree with the Commonwealth that the case before us is distinguishable from *Bumper*. Officer Pearson made no claim to having a valid search warrant, but instead he truthfully stated that he had a valid arrest warrant for Lawrence Neal. Accordingly, we believe the trial court erred by relying on *Bumper* as a matter of law as its basis for suppressing the gun.

At this point, we believe it would be helpful to examine in detail the language used by the trial court in its order granting the motion to suppress. The trial court stated, in pertinent part, as follows:

> The Commonwealth has attempted to circumvent this argument by maintaining that the *Litteral* case [is] not controlling because Laterrence Neal explicitly gave the officer consent to search the house. The Commonwealth points out that Laterrence agreed to allow the officer inside the house. The Commonwealth further argues that once inside, Laterrence Neal consented to the officer's request to walk through the home. According to the Commonwealth, Officer Pearson did not utilize threats, coercion or any other improper methods for obtaining the defendant's consent to search the house.

> The Defendant rebuts the Commonwealth's argument that Laterrence Neal gave the officer consent to search the house in [sic] reliance on the Supreme Court case of *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In *Bumper*, the Court stated that "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. [Where] there is coercion there cannot be consent.["] *Id.* at 550, 88 S.Ct. 1788.

> The situation in *Bumper* is analogous to the present set of circumstances. Once inside the house[,] Officer Pearson tells Laterrence Neal that he has a warrant for the arrest of Lawrence Neal.

---

11. The Supreme Court at n. 15 stated: "During the course of the argument in this case we were advised that the searching officers did, in fact, have a warrant. But no warrant was ever returned, and there is no way of knowing the conditions under which it was issued, or determining whether it was based upon probable cause."

12. *Bumper*, 391 U.S. at 549–50, 88 S.Ct. at 1792, 20 L.Ed.2d at 802–03.

Laterrence's consent to allow the officer to search the house was only given after being notified of this warrant. Therefore, under the law as set forth by the Supreme Court, the consent was constitutionally invalid. The fact that Officer Pearson gained entry into the house and then told Laterrence about the warrant is insignificant. The consent given to enter the house does not extend to consent to search the premises.

Therefore, as there was no valid consent to search the house, and the fact that Officer Pearson did not have reason to believe that Lawrence Neal was present at the time he attempted to execute the arrest warrant, the evidence seized from the search should be suppressed as unlawful under the Fourth Amendment to the United States Constitution.

In his brief, Laterrence contends that we must affirm the trial court's order of suppression because the Commonwealth "does not contest the factual findings" and that *Bumper* "clearly establish[es] that Officer Pearson's misuse of an arrest warrant to obtain entry into Laterrence Neal's home and to compel his consent to search the premises resulted in an illegal search[.]" The Commonwealth argues in its brief that "Laterrence Neal's consent to search was freely given and not the result of a belief that he could not refuse." We believe the Commonwealth by arguing this conclusion as to the ultimate fact has correctly framed the issue that was before the trial court, but unfortunately the trial court's factual findings did not address the ultimate fact: the voluntariness of Laterrence's consent.

In *Talbott v. Commonwealth,*[13] where our Supreme Court affirmed the trial court's denial of a motion to suppress which had claimed the defendant's consent

to search her home was not voluntary because she had been arrested, the Court stated:

> [H]er primary argument on appeal is that a consent to search cannot be voluntary if given after the defendant is placed under arrest. In *Kennedy v. Commonwealth,* Ky., 544 S.W.2d 219 (1976), we held that a written consent to search is not involuntary merely because it is executed after the defendant is taken into custody, particularly if the defendant was given *Miranda* warnings prior to executing the form. *See also United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Whether a consent to search was voluntarily given is a question of fact to be determined by a preponderance of the evidence from the totality of all the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *Cook v. Commonwealth,* Ky., 826 S.W.2d 329 (1992). The issue is a preliminary question to be decided by the trial judge, KRE 104(a), whose factual findings are conclusive if supported by substantial evidence. RCr 9.78; *Diehl v. Commonwealth,* Ky., 673 S.W.2d 711 (1984).

In the case *sub judice,* we hold that the trial court failed to make the necessary factual finding as to whether Laterrence's consent was voluntary. Accordingly, the order of the Jefferson Circuit Court granting suppression of the evidence is vacated and this matter is remanded for additional findings of fact. On remand, the trial court should make a specific finding of fact based on a preponderance of the evidence from the totality of all the circumstances as to whether Laterrence's consent to search the jacket was freely and voluntarily given. If the consent was voluntary, then the search was constitutional; if the

13. Ky., 968 S.W.2d 76, 82 (1998).

consent was not voluntary, then the search was unconstitutional, and the evidence of the gun must be suppressed.

ALL CONCUR.