**COMMONWEALTH of Kentucky, Appellant,**

v.

**David Earl MURRAY, Appellee.**

**No. 2002–CA–001507–MR.**

Court of Appeals of Kentucky.

Dec. 10, 2004.

Discretionary Review Denied by Supreme Court Nov. 16, 2005.

---

**6.** *Rearick v. Commonwealth,* 858 S.W.2d 185, 187 (Ky.1993); *Brown v. Commonwealth,* 458 S.W.2d 444, 447 (Ky.1970).

**7.** *Rearick,* 858 S.W.2d at 187.

Albert B. Chandler III, Attorney General of Kentucky, Matthew D. Nelson, Assistant Attorney General, Frankfort, KY, for Appellant.

Jeffrey H. Hoover, Jamestown, KY, for Appellee.

Before MINTON, GUIDUGLI and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

This is an appeal from an order entered by the Russell Circuit Court granting appellee David Earl Murray's motion to suppress evidence obtained as a result of a warrantless search. The issue on appeal is whether the circuit court erroneously suppressed the marijuana that was seized in an area beyond the curtilage of Murray's property. For the reasons stated hereafter, we reverse.

Murray owns property in a remote area on Mills Road in Russell County. A mobile home and a recreational vehicle ("RV") sit on a cleared area, which backs up to a tree line and woodland. Both the RV and the mobile home could be used as personal residences, but only the RV is serviced by electricity. A worn path, which is located approximately three or four feet behind the RV, leads into the wooded area.

In December 2001, Detective Dewayne Holder of the Kentucky State Police received independent, confidential information from two sources that Murray was conducting drug transactions on the property and that he was burying marijuana in the wooded area surrounding the RV and mobile home. On or about January 11, 2002,[1] Detective Holder and trooper Scott

---

1. Detective Holder, who drafted the police report, only identified January 11, 2002, as the surveillance date. However, he testified at the suppression hearing that surveillance occurred for approximately three or four

Hammond performed surveillance of the Mills Road property. During the surveillance period, the officers neither saw Murray in or near his property nor witnessed any drug activity. Nevertheless, without a warrant but in an attempt to corroborate the informants' tips, both officers walked through the cleared area adjacent to Murray's RV, passed the RV, and traveled onto the path leading into the wooded area. Proceeding up the path, the officers turned over one or more rocks and discovered marijuana buried in a man-made hole beneath one rock.[2] This hole was located approximately fifty feet behind the RV. Based on the evidence seized during the January 11 surveillance, on January 16, 2002, a search warrant was executed for Murray's RV and mobile home. Murray was indicted for trafficking in marijuana while in possession of a firearm and possession of drug paraphernalia while in possession of a firearm.

Murray subsequently moved to suppress the seized evidence. Following a suppression hearing and after personally visiting the Mills Road property, the circuit judge found that both the mobile home and the RV "could be used as a personal residence,"[3] that the RV was serviced by electricity in the name of Murray, and that the cleared area on which the mobile home and RV were located constituted the "curtilage of the apparent residences." The court held that the mobile home and RV, being designed for human habitation, were "potential or actual residences" and that even though the marijuana was located outside the curtilage of Murray's property, the officers' initial trespass through the curtilage was illegal and tainted the seizure of the evidence. The motion to suppress was granted and the Commonwealth appeals pursuant to KRS 22A.020(4).

Our standard of review is set forth in *Commonwealth v. Neal*, Ky.App., 84 S.W.3d 920, 923 (2002), which requires that "we first determine whether the trial court's findings of fact are supported by substantial evidence." Here, the findings of fact are undisputed and supported by substantial evidence.[4] Therefore, we must

days. Officer Hammond testified that it lasted two days.

2. The police report states that the officers turned over "rocks" before finding the marijuana whereas at the suppression hearing, Detective Holder testified that the first rock that he turned over covered the marijuana.

3. Upon executing the search warrant, the police found no linens, towels, toilet paper, or food in the RV.

4. In *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987), the Court pointed to four factors which should be used in resolving questions as to the extent of a home's curtilage:

the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

The Court noted that "the central component of this inquiry [is] whether the area harbors the 'intimate activity associated with the sanctity of a man's home and the privacies of life.'" *Id.*

In the present case, the circuit court failed to make any specific findings as to these four factors, but concluded "[i]n considering the guidelines of [*Dunn*], the Court finds that the cleared area surrounding the mobile home and [the RV] was a protected area and would be defined as the curtilage of these residences." Our review of the record indicates that only one of the four factors, the proximity of the area claimed as curtilage, appears to support a finding that the cleared area was a curtilage. The "curtilage" area was not within an enclosure, and aside from the rural nature of the property, no steps were taken to protect the area from observation. The final factor, regarding the nature of the uses to which the area is put, is ambiguous at best

"conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law." *Id. See also Davis v. Commonwealth,* Ky.App., 120 S.W.3d 185, 189 (2003).

■ The Commonwealth argues that Murray did not have a reasonable expectation of privacy in the wooded area where the marijuana was ultimately discovered, and that the officers were justified in conducting an open fields search. The Commonwealth contends that the officer's initial trespass onto Murray's property was immaterial. We agree.

In *Richardson v. Commonwealth,*[5] Kentucky's highest court held that the fact that a warrantless search began within a curtilage, in violation of constitutional prohibitions,[6] did not render inadmissible the evidence discovered outside the curtilage. Although this case admittedly predates modern search and seizure analysis, it was decided the same year as *Hester v. United States,*[7] which is frequently cited as the basis for the "open fields" exception to the search warrant requirement.[8]

Even under a more contemporary view of Fourth Amendment jurisprudence, the Supreme Court has noted that "the Fourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures," and that "the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure."[9] In *Oliver v. United States,* the Supreme Court reaffirmed the open fields doctrine, notwithstanding the fact that the search may have involved a trespass on the property of the defendant, stating that "in the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment."[10] Similarly, in *Maddox v. Commonwealth,*[11] the court recognized that "an open field is not an area entitled to Fourth Amendment protection, even where a civil trespass is involved[.]"

In the instant case, the circuit court explicitly found that the contraband was found as a result of a search in an open field, *i.e.,* an area not within the curtilage of the mobile home or RV. As case law does not recognize a trespass as invoking Fourth Amendment protections, the circuit court erred in excluding the evidence due to its finding that the officers trespassed through the curtilage.

since the property, while serviced by electricity and identified as a "potential residence," was not being used for any apparent purpose at the time of the police surveillance. If we were reviewing this issue *de novo* we may have reached a different conclusion than the circuit court. We cannot however say that the circuit court's finding that the cleared area constituted a curtilage was clearly erroneous.

5.  205 Ky. 434, 266 S.W. 1 (1924).

6.  The court in *Richardson* expressly addressed Section 10 of the Kentucky Constitution. However, our State Constitution "provides no greater protection than does the federal Fourth Amendment." *LaFollette v. Commonwealth,* Ky., 915 S.W.2d 747, 748

(1996); *Estep v. Commonwealth,* Ky., 663 S.W.2d 213, 215 (1983).

7.  265 U.S. 57, 59, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924).

8.  *See, e.g., United States v. Dunn,* 480 U.S. at 300, 107 S.Ct. at 1139; *Oliver v. United States,* 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214 (1984).

9.  *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967).

10.  466 U.S. at 183–84, 104 S.Ct. at 1743–44.

11.  Ky., 503 S.W.2d 481 (1973)(quoting 68 Am.Jur.2d *Search and Seizures* § 20).

The order of the Russell Circuit Court is reversed and this matter is remanded to that court for further proceedings.

MINTON, Judge, Concurs.

GUIDUGLI, Judge, Concurs in result only and files separate opinion.

GUIDUGLI, Judge, Concurring in result only.

I concur in result only. I believe that the trial court's finding that the marijuana was located outside the curtilage requires a finding that the contraband was located in an open field based upon *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). However, based upon the facts of this case, I do not believe that the trial court addressed this issue as thoroughly and thoughtfully as it should have. In its opinion, the circuit court stated "[w]hether the marijuana itself was located within an area property [sic] defined as curtilage is not necessary to this opinion. However, the Court does find that the marijuana was located outside the curlilage [sic]." Our basis for reversing the circuit court's order is the fact that the marijuana was outside the curtilage and thus, subject to the open field exception to a search warrant. As stated in *Oliver:*

> The historical underpinnings of the open fields doctrine also demonstrate that the doctrine is consistent with respect for "reasonable expectations of privacy." As Justice Holmes, writing for the Court, observed in *Hester,* (citation omitted), the common law distinguished "open fields" from the "curtilage," the land immediately surrounding and associated with the home. See 4 W. Blackstone, Commentaries. The distinction implies that only the curtilage, not the neighboring open fields, warrants the Fourth Amendment protections that attach to the home. At common law, the

curtilage is the area to which extends the intimate activity associated with the "sanctity of a man's home and the privacies of life," (citation omitted), and therefore has been considered part of [the] home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. (Citations omitted). Conversely, the common law implies, as we reaffirm today, that no expectation of privacy legitimately attaches to open fields. (Footnotes omitted).

*Id.,* 466 U.S. at 180, 104 S.Ct. at 1742.

While I am not convinced that the circuit court's finding that the pathway and the subsequent discovery of the marijuana under a rock within 50 feet of the recreational vehicle located in the curtilage was in fact in an "open field," that issue is not before this Court and as such, must be accepted. For the reasons stated above, I concur in result only.