Delbert BESSINGER, and Paul Carter, Appellants

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2013-CA-002111-DG

Court of Appeals of Kentucky.

RENDERED: DECEMBER 19, 2014; 10:00 A.M.

BRIEFS FOR APPELLANTS: Matthew J. Baker, Bowling Green, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Jamie L. Spinks, Special Assistant Attorney General, Bowling Green, Kentucky

BEFORE: CAPERTON, KRAMER,[1] AND, STUMBO, JUDGES.

## OPINION

CAPERTON, JUDGE:

Appellants Delbert Bessinger and Paul Carter appeal from the Warren Circuit Court's reversal of the Warren District Court's grant of Appellants' motion to suppress the evidence due to the unavailability of the arresting officer's in-car video tape. After a thorough review of the parties' arguments, the record, and the applicable law, we affirm the circuit court.

The genesis of this appeal occurred on October 8, 2012, when Delbert Bessinger was arrested and charged with operating a motor vehicle under the influence and other traffic offenses when Bowling Green Police Officer Mary Fields observed Bessinger stopped in the middle of the roadway, slowly proceed across the center line of a by-pass and drive the wrong way into a parking lot. It is undisputed, and reflected on the uniform citation, that Officer Fields recorded the traffic stop. After stopping Bessinger, Officer Fields administered standard field sobriety tests. Bessinger was taken to a medical center where he submitted to a blood draw, which

---

1. Judge Joy A. Kramer, formerly Joy A. Moore.

showed a drug content of 178ng/ml of Oxycodone.

Paul Carter was arrested and charged with operating a motor vehicle under the influence and failure to wear a seatbelt on November 16, 2012. Bowling Green Police Officer Ben Carroll stopped Carter for failure to wear a seat belt and then administered a field sobriety test. It is undisputed that Officer Carroll recorded the stop. Carter was arrested and transported to the Warren County Regional Jail where he submitted to the Intoxilyzer 5000; the result was 0.152.

Bessinger and Carter, through counsel, requested the in-car recordings of their stops in the course of discovery. The Commonwealth could not produce them and explained to the district court that a permanent server failure had occurred at the Bowling Green Police Department. The Appellants moved to suppress the evidence related to any and all evidence and statements from the arresting officer given that the in-car video has not been produced in discovery.

In granting the motion to suppress, the district court noted that the Commonwealth did not dispute that such a video once existed and did not dispute its inability to produce the video. The district court found that the RCr 7.26 mandated the Commonwealth to produce the video. Ad-

ditionally, the court determined that the video recordings were the "best evidence" of the officer's statements. Last, the court relied upon *Green v. Commonwealth*, 684 S.W.2d 13 (Ky.App.1984), and *Sanborn v. Commonwealth*, 754 S.W.2d 534 (Ky.1988), in concluding that the destruction of the evidence rendered the evidence properly suppressed. The Commonwealth appealed this ruling to the circuit court.

The circuit court reversed the district court's grant of the motion to suppress the evidence. The court distinguished *Sanborn* as the destruction of evidence therein was intentional. The court concluded that neither the Commonwealth nor the Bowling Green Police Department intentionally destroyed the video; instead the evidence was lost from an unexpected and unintentional act of an intervening entity, computer failure. *Green* was distinguished because of the type of evidence destroyed. *Green* involved the destruction of the drug sample, leaving the defendant without the ability to test the sample. The court found this markedly different as the evidence of the crime was still available, the breathalyzer results or the blood test and the arresting officer was available to testify. The court did not address the best evidence argument relied upon in part by the district court.[2] Instead, the court ad-

---

2. We have reviewed the best evidence argument advanced on appeal and must conclude that suppression on this basis is unmerited. The best evidence rule requires a party to produce the most authentic evidence which is within its power to produce. *Marcum v. Commonwealth*, 390 S.W.2d 884, 886 (Ky. 1965). The foundation of the rule, found in KRE 1002, provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required...." *Johnson v. Commonwealth*, 231 S.W.3d 800, 805 (Ky.App.2007). Also relevant to the matter herein are KRE 701, which limits opinion testimony by a lay witness to that which is "[r]ationally based on

the perception of the witness; and ... [h]elpful to a clear understanding of the witness' testimony or a determination of a fact in issue," and KRE 602, which requires a witness to have personal knowledge before being allowed to testify about a subject. While a witness testifying from personal knowledge and rational observation of events perceived may proffer narrative testimony within the permissible confines of the rules of evidence, "he may not *interpret* audio or video evidence, as such testimony invades the province of the jury, whose job is to make determinations of fact based upon the evidence." *Cuzick v. Commonwealth*, 276 S.W.3d 260, 265–66 (Ky.

dressed the remaining issue of sufficiency of the evidence and whether the Appellants would be entitled to a missing evidence instruction depending on the proof at trial.

The court concluded that based on the missing evidence case law the instruction should not be given if the loss was from mere negligence, which the court concluded was the case *sub judice*. The court also concluded that the technical failure fell into the category of "normal course of file maintenance". The court determined that the best evidence instruction was not warranted as there was no proof that the evidence was missing from anything other than computer failure or at least mere negligence. It is from this order that the Appellants now appeal.

On appeal, the Appellants argue that the circuit court erred in its reversal of the district court, to which the Commonwealth disagrees.

In review of the trial court's decision on a motion to suppress, this Court must first determine whether the trial court's findings of fact are clearly erroneous. Under this standard, if the findings of fact are supported by substantial evidence, then they are conclusive. Kentucky Rules of Criminal Procedure (RCr) 9.78; *Lynn v. Commonwealth*, 257 S.W.3d 596, 598 (Ky. App.2008). "Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the

law to those facts to determine whether its decision is correct as a matter of law." *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002) (citing *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky.1998); *Commonwealth v. Opell*, 3 S.W.3d 747, 751 (Ky.App.1999)). We review *de novo* the issue of whether the court's decision is correct as a matter of law. *Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky. App.2000). With this in mind, we turn to the issues presented by the parties.

■ First, we shall address whether the circuit court erred in reversing the district court's grant of the motion to suppress based on the inability of the Commonwealth to provide the video recording.

At issue, RCr 7.26 states in part:

(1) Except for good cause shown, not later than forty-eight (48) hours prior to trial, the attorney for the Commonwealth shall produce all statements of any witness in the form of a document or recording in its possession which relates to the subject matter of the witness's testimony and which (a) has been signed or initialed by the witness or (b) is or purports to be a substantially verbatim statement made by the witness. Such statement shall be made available for examination and use by the defendant.

2009) (internal quotation marks omitted and emphasis added). "It is for the jury to determine as best it can what is revealed in the tape recording without embellishment or interpretation by a witness." *Gordon v. Commonwealth*, 916 S.W.2d 176, 180 '(Ky.1995).

As noted, the best evidence rule requires a proponent who *seeks to prove the contents* of a writing, recording, or photograph to produce the original. *See* KRE 1002. For example, the contents of a photograph are "sought to be proved when it has probative value that is independent of the testimony of witnesses and

thus is offered as a 'silent witness.' ... the rule would apply to ... photographs used to prove details of objects, scenes, or events not directly observed by the naked eye of witnesses." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 11.05(3) (4th ed.2003).

Clearly, *sub judice*, the arresting officer may testify as to his personal knowledge and be cross-examined as such as the officer would not be interpreting the video or seeking to prove the content thereof.

In interpreting RCr 7.26, the *Sanborn* Court addressed the situation where the prosecution intentionally destroyed tapes of witnesses' statements:

We need not decide at what point before the witnesses testified the prosecutor should be compelled to produce these tapes. The critical point is the prosecutor made such notes as would assist him in using these persons as witnesses for the prosecution, and then destroyed the tapes, so that these verbatim statements were not available for the defense at any point. This was misconduct of constitutional proportions under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, 219 (1963), and its progeny. *Brady* rules that where the prosecutor "withholds evidence on demand of an accused which, if made available, would [or might] tend to exculpate him or reduce the penalty," such is a violation of due process. *Id.*, 373 U.S. at 87–88, 83 S.Ct. at 1197.

These verbatim tapes were as such the "best evidence" of the contents of the witnesses' statements (Lawson, *Kentucky Evidence Law Handbook*, § 7.15 (2d ed.1984)), and a summary made by the prosecutor before he destroyed them does not suffice. Prejudice is presumed where the prosecutor destroys evidence. *Hilliard v. Spalding*, 719 F.2d 1443, 1446–47 (9th Cir.1983). As stated in *United States v. Pollock*, 417 F.Supp. 1332, 1349 (D.Mass.1976):

"Such action passes beyond the line of tolerable human imperfection and falls into the realm of fundamental unfairness."

In *Pollock*, the court held that such action called for dismissal. However, in this case, the testimony of these witnesses, while important, was not essential to the Commonwealth's case. The relief requested and denied was not dismissal or exclusion, but simply an instruction permitting the jury to draw a favorable inference for the defendant from the destruction of the evidence. Reversal with directions to give the requested instruction is the appropriate remedy. In *State v. Maniccia*, 355 N.W.2d 256, 259 (Iowa App.1984), in similar circumstances, the court held that a missing evidence instruction was sufficient to offset the prosecutor's misconduct. We so hold here.

*Sanborn v. Commonwealth*, 754 S.W.2d 534, 539–40 (Ky.1988)(internal footnotes omitted).

We believe that *Sanborn* is markedly different than the situation presented here. The *Sanborn* prosecutor intentionally destroyed the taped statements, unlike the seemingly unintentionally technical failure of the Bowling Green Police Department. Also in *Sanborn*, these were statements of witnesses and, as such, observations or fact statements that were not observed by the defendant. In contrast, the defendants below were present during any statements made to them and necessarily by them, and free to make and recall any observations of the situation. Thus, we do not believe that *Sanborn* mandated suppression of the evidence; accordingly, we affirm the circuit court's reversal on this basis. We now turn to whether the circuit court erred in concluding that a missing evidence instruction was unwarranted.

██ First, we note that the court's ruling was premature given that this matter has not proceeded to trial; thus, there is the possibility that the Appellants will be entitled to a missing evidence instruction at trial. *See University Medical Center, Inc. v. Beglin*, 375 S.W.3d 783, 790

(Ky.2011).[3] However, we shall briefly address this matter as it is likely to emerge again at trial.

First, the purpose of a "missing evidence" instruction is to cure any Due Process violation attributable to the loss or destruction of *exculpatory* evidence by a less onerous remedy than dismissal or the suppression of relevant evidence.... Second, the Due Process Clause is implicated only when the failure to preserve or collect the missing evidence was intentional and the potentially exculpatory nature of the evidence was apparent at the time it was lost or destroyed. None of the above precludes a defendant from exploring, commenting on, or arguing inferences from the Commonwealth's failure to collect or preserve any evidence. It just means that absent some degree of "bad faith," the defendant is not entitled to an instruction that the jury may draw an adverse inference from that failure.

*Estep v. Commonwealth*, 64 S.W.3d 805, 810 (Ky.2002).

We agree with the court that there was no evidence of bad faith on behalf of either the Commonwealth or the Bowling Green Police Department regarding the loss of the tape given the facts we have on appeal. Per *Estep*, the Appellants would not be entitled to the instruction. However, we reiterate that the Appellants will have the opportunity to prove their entitlement to a missing evidence instruction at trial. Likewise, the lack of the instruction does not foreclose the Appellants from exploring, commenting on or arguing inferences from the failure to preserve the video recording.

The court below additionally relied upon *Beglin* in concluding that the Appellants would not be entitled to a missing evidence instruction:

[T]here are certain circumstances in which well established authority provides that a missing evidence instruction should not be given. Among these is when the proof shows that the evidence was lost as a result of "mere negligence." *Mann v. Taser Intern., Inc.,* 588 F.3d 1291, 1310 (11th Cir.2009). This fits comfortably within our missing evidence standard, because mere negligence negates bad faith, an element of the instruction. Similarly, other common types of cases where the instruction will not be warranted include loss of evidence as a result of fire, weather, natural disaster, other calamities, or destruction in the normal course of file maintenance, particularly in accordance with industry or regulatory standards. Lawson, *The Kentucky Evidence Law Handbook*, § 2.65[3] (4th ed. 2003) (An inference based on destruction (or loss) may not be drawn if the destroyer acted inadvertently (mere negligence) or if there is an adequate explanation for the destruction (or loss))....

*University Medical Center, Inc. v. Beglin,* 375 S.W.3d 783, 791 (Ky.2011).

We agree with the court below that mere negligence would not result in a

---

3. The *Beglin* Court held:

[W]e believe that the better practice is to treat missing evidence like any other evidentiary issue, and refrain from placing an enhanced burden upon the opposing party to obtain the instruction. We therefore adopt no special rule for measuring the quantum or quality of evidence that will authorize a missing evidence instruction. A trial court may use normal inferences and suppositions, and may rely upon circumstantial evidence in deciding whether to admit missing evidence testimony or give a corresponding instruction. In other words, the standard is as typical as with any other issue.

*Id.* (internal footnotes omitted).

missing evidence instruction. However, we disagree with the court that a permanent server failure constitutes destruction in the normal course of file maintenance. Indeed, we would surmise that such a loss is abnormal. At trial, the Appellants will have the opportunity to prove their entitlement to a missing evidence instruction.

In light of the aforementioned, we affirm.

STUMBO, JUDGE, CONCURS.

KRAMER, JUDGE, CONCURS IN RESULT ONLY.