RENDERED: JANUARY 8, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0441-MR

COMMONWEALTH OF KENTUCKY                                        APPELLANT

v.
APPEAL FROM ROWAN CIRCUIT COURT
HONORABLE ROBERT W. MCGINNIS, JUDGE
ACTION NO. 19-CR-00149

JESSICA SKAGGS                                                 APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; GOODWINE AND KRAMER, JUDGES.

KRAMER, JUDGE: The Commonwealth appeals from an order of the Rowan

Circuit Court suppressing all evidence from what it determined was an unlawful

seizure of Jessica Skaggs by Sergeant Chris Waltz of the Morehead Police

Department. Upon review, we vacate and remand.

## Factual and Procedural Background

On the night of May 24, 2019, Sgt. Waltz received a dispatch that the owner of the Valero gas station noticed a suspicious vehicle in front of the store after hours. Although it is unclear from the record before us what time the store closed, there were still employees inside cleaning when Sgt. Waltz arrived at 12:48 a.m. He saw a man at the front window of the store waving in what he assumed was an attempt to get the attention of the employees.[1] Sgt. Waltz instructed the man to have a seat on the curb and asked for his identification. There was also a vehicle parked in front of the doors at the entrance of the store. Skaggs was in the driver's seat with the window down and, according to Sgt. Waltz, appeared to be scratching lottery tickets. The passenger's side door of her vehicle was open. Sgt. Waltz approached Skaggs. He testified that she appeared very nervous. He instructed her to exit the vehicle. Sgt. Waltz further testified that Skaggs grabbed a black velvet bag from the center console and placed it in her pocket prior to exiting the vehicle. He then obtained Skaggs' identification. After running her information through dispatch, he discovered that Skaggs had an outstanding warrant from Boyd Circuit Court.

Once Sgt. Waltz learned of the arrest warrant, he patted down Skaggs. He removed the black velvet bag from her pocket, which held five smaller bags.

---

[1] The man was later identified as Brian Nance, who had been a passenger in Skaggs' vehicle.

Skaggs eventually admitted the bag contained methamphetamine; twenty white pills identified as gabapentin; a bag of marijuana; and numerous small, empty baggies. Sgt. Waltz informed Skaggs that he was arresting her for trafficking methamphetamine in addition to the warrant. At that time, Skaggs stated she sold the drug only to support her own habit. Sgt. Waltz testified that Skaggs gave him permission to search her vehicle and informed him that he would find a scale in the center console, which he did.

Skaggs was indicted by a Rowan County grand jury on one count of trafficking methamphetamine, first degree, two or more grams; one count of trafficking in a controlled substance, third degree (gabapentin); possession of marijuana; and being a persistent felony offender, first degree. Skaggs filed a motion to suppress evidence resulting from the search of her person and vehicle as well as the statements she made while in custody. The circuit court held a hearing and subsequently entered an order suppressing all evidence seized and all statements made by Skaggs. The Commonwealth filed the instant appeal.

**Standard of Review**

Our standard of review applicable to a decision on a motion to suppress requires that we first determine whether the circuit court's findings of fact are supported by substantial evidence. If so, we must then conduct a *de novo* review of the circuit court's application of the law to determine whether its

decision is correct as a matter of law. *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002). The presence or absence of "reasonable suspicion" is also reviewed *de novo* on appeal. *Gray v. Commonwealth*, 150 S.W.3d 71, 74 (Ky. App. 2004).

**Analysis**

The Fourth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment,[2] provides, in relevant part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" In defining what constitutes a seizure under the Fourth Amendment, the United States Supreme Court has ruled that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889 (1968). A court must examine the totality of circumstances surrounding the incident to determine whether a reasonable person believed he was free to walk away, which includes, but is not limited to, "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980). The exclusionary rule provides that "evidence obtained in violation of the Fourth

---

[2] *See also* Section Ten of Kentucky's Constitution (KY. CONST. §10).

Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347, 94 S. Ct. 613, 619, 38 L. Ed. 2d 561 (1974) (citation omitted).

There are, however, exceptions to the exclusionary rule. The attenuation doctrine is one of three such exceptions[3] recognized by the United States Supreme Court. It allows evidence to be admitted "when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Utah v. Strieff*, ___U.S. ___, 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016) (internal quotations and citation omitted). In *Strieff*, the State conceded that the officer did not have probable cause to seize Strieff; however, once the officer discovered Strieff had an outstanding arrest warrant, the warrant "broke the causal chain between the unconstitutional stop and the discovery of evidence[.]" *Id.* at 2063.

Turning to the case at hand, we find no fault in the circuit court's determination that Sgt. Waltz's initial seizure of Skaggs was not constitutionally justified; indeed, the record contains evidence of substance supporting this

---

[3] The other two exceptions are the independent source doctrine and the inevitable discovery doctrine. *See Warick v. Commonwealth*, 592 S.W.3d 276, 281 (Ky. 2019).

decision.  Sgt. Waltz could have briefly detained Skaggs, even without probable

cause to arrest her, if there was a reasonable suspicion that criminal activity was

afoot.  *Gray*, 150 S.W.3d at 74 (citing *Terry*, 392 U.S. at 20-23).  Sgt. Waltz

testified only that he "asked [Skaggs] to step out [of her vehicle] because she was

nervous plus I already had one individual sitting on the curb to where I could keep

a visual on both of them better."[4]  In order to justify the intrusion upon Skaggs'

personal security, the Commonwealth "must be able to point to specific and

articulable facts which, taken together with rational inferences from those facts,

reasonably warrant that intrusion."  *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880.  The

Commonwealth failed to do so.  Sgt. Waltz did not, at any time, testify to any

specific and articulable facts to support the conclusion that criminal activity was

afoot or that a crime was being committed in his presence when he arrived at the

store.[5]  Although the Commonwealth now argues that Skaggs was trespassing, we

note that Sgt. Waltz never charged Skaggs with criminal trespass.[6]  Moreover, the

---

[4] Skaggs testified that another officer showed up to the scene at some point to assist Sgt. Waltz.

[5] *See*, *e.g.*, *Commonwealth v. Mobley*, 160 S.W.3d 783 (Ky. 2005).

[6]  Although not determinative of the resolution of this appeal, we note that at no point in the record before us did the Commonwealth argue that Sgt. Waltz believed Skaggs to be trespassing on the premises as the basis for his actions.  We have repeatedly stated that "[t]he Court of Appeals is without authority to review issues not raised in or decided by the trial court." *Reg'l Jail Auth. v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).  "It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court." *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990) (citation omitted).

record before us does not support any such inference.[7]  Thus, we agree with the circuit court that the initial seizure does not survive constitutional scrutiny.

However, the inquiry into suppression of the evidence analysis does not end there.  We must now engage in a *de novo* review to determine if the circuit court erred as a matter of law in its application of the facts to the law, and pursuant to *Strieff*, 136 S. Ct. 2056, we conclude it did.

Under the mandates of *Strieff*, we must address "whether the discovery of a valid arrest warrant was a sufficient intervening event to break the causal chain between the unlawful stop and the discovery of drug-related evidence[.]"  *Id.* at 2061.  To make that determination, we turn to the factors enumerated in *Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975).

First, we look at the temporal proximity of the illegal seizure and the discovery of the drug-related evidence.  *Id.* at 603.  This factor weighs in favor of suppression because the record shows that Sgt. Waltz arrived at the Valero at 12:48

---

[7] There is no evidence in the record before us that the Valero gas station was in a high crime area or that the store had recently been the victim of criminal activity.  Further, there is nothing in the record before us that demonstrates the owner or employees had asked Skaggs to leave before calling the police.  The record is also devoid of any indication that there were "no trespassing" or other signs to warn the public that it was impermissible to be in the parking lot after hours.  *See Howard v. Spradlin*, 562 S.W.3d 281, 285 (Ky. App. 2018).

a.m. on May 24, 2019, and Skaggs was subsequently arrested at 1:31 a.m. *Brown* instructs that a short time interval favors suppression. *Id.* at 604.

The second *Brown* factor asks whether there were intervening circumstances involved. The facts in the instant case are very similar to those in *Strieff*, wherein "the warrant was valid, it predated [the officer's] investigation, and it was entirely unconnected with the stop. And once [the officer] discovered the warrant, he had an obligation to arrest Strieff." *Strieff*, 136 S. Ct. at 2062. Further, the officer's "arrest of Strieff thus was a ministerial act that was independently compelled by the pre-existing warrant. And once [the officer] was authorized to arrest Strieff, it was undisputedly lawful to search Strieff as an incident of his arrest to protect [the officer's] safety." *Id.* at 2063. The facts herein are virtually indistinguishable. Therefore, this factor weighs in favor of admitting the evidence.

Finally, we turn to the third factor, which is "the purpose and flagrancy of the official misconduct." *Brown,* 422 U.S. at 604, 95 S. Ct. at 2262. "For the violation to be flagrant, more severe police misconduct is required than the mere absence of proper cause for the seizure." *Strieff*, 136 S. Ct. at 2064. In examining the record before us, there is no indication that Sgt. Waltz acted in what can be described as anything other than good faith. He responded to a dispatch regarding a suspicious vehicle after hours at the Valero gas station. While it is true that he could have asked for Skaggs' identification without ordering her from the

vehicle, this hardly rises to a purposeful and flagrant violation of Skaggs' Fourth Amendment rights. This factor weighs in favor of admitting the evidence.

While Sgt. Waltz's initial seizure of Skaggs was without reasonable suspicion and was constitutionally unsound, *Strieff* compels us to conclude that his conduct thereafter was lawful, including running Skaggs' identification through dispatch to check for outstanding warrants. *Id.* at 2063 (citation omitted). The discovery of the arrest warrant broke the causal chain between the unconstitutional stop and the discovery of the evidence of issue. Thus, any evidence located after the discovery of the arrest warrant is not fruit of the poisonous tree and should not be suppressed.

Regarding statements and admissions made by Skaggs (*e.g.*, that she sold methamphetamine to support her own habit and that there were scales in her vehicle), we conclude that substantial evidence of record supports the circuit court's findings that those were voluntary and not made as a result of custodial investigation in violation of *Miranda v. Arizona*, 384 U.S. 436, 440, 86 S. Ct. 1602, 1610, 16 L. Ed. 2d 694 (1966). However, the circuit court nevertheless suppressed the statements because they were made in response to the "warrantless and unreasonable detainment" of Skaggs and were fruit of the poisonous tree. Under the strength of *Strieff* and the analysis undertaken herein, we hold that

conclusion to be erroneous.[8]  Hence, the suppression of Skaggs' admissions and statements is not warranted.

## Conclusion

The findings of fact of the circuit court regarding the initial seizure of Skaggs were supported by substantial evidence.  However, because the circuit court failed to apply the doctrine of attenuation to its analysis of whether the search and seizure was illegal under the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution, we conclude that suppression of the evidence under review was not warranted.  Accordingly, we vacate the decision of the Rowan Circuit Court and remand for proceedings not inconsistent with this opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Erin Hoffman Yang
Frankfort, Kentucky

---

[8] In its brief to this Court, Skaggs argues that her statements occurred in violation of *Miranda* and should be suppressed for that reason.  However, Skaggs did not file a cross-appeal on the issue; therefore, we shall not address it.