RENDERED:  JUNE 15, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0120-MR

ALEX RYAN PAYNE                                               APPELLANT


V.

ON APPEAL FROM DAVIESS CIRCUIT COURT
HONORABLE LISA P. JONES, JUDGE
NO. 19-CR-00834


COMMONWEALTH OF KENTUCKY                        APPELLEE


**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

Alex Ryan Payne was convicted in Daviess Circuit Court of twelve counts of possession of matter portraying a sexual performance by a minor; six counts of use of a minor in a sexual performance with a victim under age sixteen; and one count of use of minor in a sexual performance with a victim under age eighteen.  He was sentenced to a total of seventy years' imprisonment and appeals to this Court as a matter of right.[1]  Payne asserts the trial court erred by:  (1) denying his motion to suppress evidence obtained from the seizure of his cellphone and passcode; and (2) incorrectly instructing the jury regarding its discretion to recommend consecutive and concurrent sentences.  After a careful review, we affirm.

---

[1] Ky. Const. § 110(2)(b).

In 2012, when Payne was twenty-three years of age, he met T.K., who was then twelve years of age, on Facebook. Payne initially posed as a fifteen-year-old boy. T.K. discovered Payne was not fifteen years of age when he sent her a photo of himself. Payne eventually requested nude photos from T.K., which she provided. He would also send explicit photos of himself. They remained in contact online and over the phone for two years until T.K. broke off contact with Payne.

T.K. later resumed contact with Payne when she was seventeen years of age because Payne had begun communicating with her younger sister. Payne asked T.K. if they could meet so that T.K. could perform oral sex on him. T.K. complied, believing Payne would expose their prior relationship if she did not agree. Payne and T.K. met several other times and engaged in oral and penetrative sex. During one of these encounters, Payne recorded T.K. performing oral sex on him, without her knowledge.

Payne began to stalk and harass T.K. After T.K. again cut off contact with Payne, Payne sent nude pictures of T.K. to her boyfriend and created a fake Facebook account using a photograph of T.K. performing oral sex as the profile picture. Following this incident, T.K. reported Payne to the police.

Based on information provided by T.K. and additional investigation, Detective Brad Youngman obtained a warrant to search the residence of Payne's mother. During the search, Det. Youngman seized one of Payne's cellphones. Det. Youngman also coordinated with Indiana law enforcement officers who obtained a warrant to search the residence of Payne's girlfriend,

2

Payne's vehicles, and his electronic devices. The Indiana warrant did not authorize the search of Payne's person.

Indiana State Police Det. Brock Werne and another detective located Payne at his workplace in Perry County, Indiana. Det. Werne did not mention the search warrant and asked Payne to turn over his cellphone and password. Payne voluntarily agreed. A forensic search of Payne's two cellphones revealed sexually explicit material containing minors.

Det. Youngman identified one of the girls, A.D., who in turn identified M.W. Payne began contacting A.D. when she was fourteen years old and M.W. when she was twelve years old. As with T.K., Payne initially posed as a teenager. He eventually requested that each of the girls take off their shirts while talking to him online and they complied. Det. Youngman identified six photographs of another victim, S.B., who was ten years old. In this instance, Payne pretended to be a twelve-year old boy and requested that S.B. send him nude photos. Unfortunately, Det. Youngman was unable to identify another young girl who appeared in ten explicit photographs found on Payne's cellphone.

Payne was indicted on twelve counts of possession of matter portraying a sexual performance by a minor; six counts of use of a minor in a sexual performance with a victim under 16 years of age; and one count of use of a minor in a sexual performance with a victim under 18 years of age. Prior to trial, Payne filed a motion to suppress the evidence obtained from the search of his cellphones, which the trial court denied. Following trial, the jury convicted

Payne on all charges. The trial court imposed a total sentence of seventy years' imprisonment. This appeal followed.

Payne first argues the trial court erred by denying his motion to suppress the evidence obtained from his cellphone. Specifically, he argues that he did not voluntarily consent to provide his cellphone and password to law enforcement. We disagree.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." All warrantless searches are unreasonable, per se, under the Fourth Amendment unless an established exception applies. *Commonwealth v. Hatcher*, 199 S.W.3d 124, 126 (Ky. 2006). Consent is a valid exception to the warrant requirement under the Fourth Amendment. *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002). The Commonwealth bears the burden of satisfying the requirements of a claimed exception. *Id.* "Whether a consent to search was voluntarily given is a question of fact to be determined by a preponderance of the evidence from the totality of all the circumstances." *Id.* at 925 (quoting *Talbott v. Commonwealth*, 968 S.W.2d 76, 82 (Ky. 1998)).

We review a trial court's decision on a motion to suppress on two levels. *Id.* at 923. First, we must "determine whether the trial court's findings of fact are supported by substantial evidence." *Id.* If so, they are conclusive. *Id.* Second, we must "conduct a de novo review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law." *Id.*

4

The trial court entered detailed findings of fact. In cooperation with Kentucky authorities, Det. Werne obtained a search warrant from the magistrate of Perry County, Indiana, to search and seize any "computers or electronic devices," belonging to Payne, including cellular phones. The warrant authorized Det. Werne to search the residence of Payne's girlfriend, and the three vehicles registered to Payne. The Indiana warrant did not authorize the search of Payne's person.

Det. Werne located Payne at his place of employment in Perry County, Indiana. Det. Werne and another detective were dressed in plain clothes. The trial court described the encounter that followed:

> They identified themselves as law enforcement and asked at the office if they could speak with [Payne] who subsequently joined them in a private room. The Defendant was not placed under arrest. No guns were drawn. No voices were raised. No mention was made of the search warrant. [Det.] Werne asked [Payne] for his cell phone and password, and [Payne] willingly provided the device and information then requested an attorney. . . . There was no show of force. [Payne] was not in custody.

After Payne voluntarily produced his cellphone and password, Det. Werne informed Payne that he had a search warrant.

Payne now attempts to recast his voluntary consent as the product of coercion by show of authority and deception. Contrary to Payne's contention that Det. Werne "insisted" that Payne turn over his cellphone, Det. Werne testified that he simply asked for it and Payne willingly complied. Payne has not pointed out any evidence of record to controvert the trial court's factual findings. He simply asks this Court to substitute our view of the evidence for that of the trial court. This is not the function of an appellate court. *Hampton*

5

*v. Commonwealth*, 231 S.W.3d 740, 749 (Ky. 2007). We have reviewed the record and determined the trial court's findings of fact were supported by substantial evidence.

Payne attempts to liken his situation to *United States v. Mendenhall*, 446 U.S. 544, 552 (1980). In *Mendenhall*, the Supreme Court identified several factors to determine whether the seizure of a person has occurred, such that consent may be deemed involuntary: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 555. None of these factors are present here. We cannot conclude the trial court erred by denying Payne's motion to suppress.

Payne next argues the trial court improperly instructed the jury concerning their discretion to recommend consecutive or concurrent sentences because it was not informed of the effect of KRS 532.110(1)(d). He concedes this error was not properly preserved for review and requests palpable error review.

RCr[2] 10.26 authorizes an appellate court to review an unpreserved error as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

---

[2] Kentucky Rules of Criminal Procedure.

A palpable error is "easily perceptible, plain, obvious, and readily noticeable." *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky. 2006). To demonstrate manifest injustice, a party must show the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006). In other words, a palpable error occurs where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

The jury initially recommended a total of sentence of seventeen years' imprisonment which was structured as follows:

- Count 1— possession of matter portraying a sexual performance by a minor relating to victim, M.W. Class D felony. The jury recommended a sentence of one year.

- Count 2— possession of matter portraying a sexual performance by a minor relating to victim, A.D. Class D felony. The jury recommended a sentence of one year.

- Counts 3-8—use of a minor in a sexual performance, victim less than sixteen years of age—relating to S.B. Class B felony. The jury recommended a sentence of ten years on each count.

- Count 9—use of a minor in a sexual performance victim less than sixteen years of age—relating to victim, T.K. Class C felony. The jury recommended a sentence of five years.

- Counts 10-19—possession of matter portraying a sexual performance by a minor relating to an unidentified victim. Class D felony. The jury recommended a sentence of one year for each count.

The jury further recommended each one-year sentence under counts 1, 2, and 10-19 run consecutively for a total of twelve years, to be run consecutively with the five-year sentence imposed under count 9. The

7

jury further recommended each ten-year sentence under counts 3-8 run concurrently with the other sentences for a total, combined sentence of seventeen years' imprisonment.

Before final sentence was imposed, defense counsel informed the trial court that the jury's recommendation that counts 3-8 run concurrently with the other sentences did not comply with KRS 532.110(1)(d), which requires multiple sentences against multiple victims to run consecutively. Subsequently, the trial court notified the parties that it may deviate from the jury's recommendation as to whether the sentences be run consecutively or concurrently. The trial court further instructed the parties to present arguments concerning whether the sentences should run consecutively or concurrently.

Prior to the final sentencing hearing, the trial court conducted a conference in chambers and informed the parties it needed additional time to review the applicable sentencing statutes, particularly KRS 532.110(1)(d), and caselaw. The trial court then continued the final sentencing. After the final sentencing hearing, the trial court ultimately concluded it was required to run each of Payne's individual sentences consecutively under KRS 532.110(1)(d) for a total of seventy-seven years' imprisonment, which it then reduced to seventy-years under the statutory cap contained in KRS 532.110(1)(c).

As a general matter, a trial court has the discretion to determine whether multiple sentences should run consecutively or concurrently. KRS 532.110(1). This discretion includes the authority to deviate from a jury's recommendation

8

on consecutive or concurrent sentences. *Jones v. Commonwealth*, 833 S.W.2d 839, 842 (Ky. 1992). KRS 532.110(1)(d) is an exception to the general rule and provides "[t]he sentences of a defendant convicted of two (2) or more felony sex crimes, as defined in KRS 17.500, involving two (2) or more victims shall run consecutively." This Court has specifically held that the purpose KRS 532.110(1)(d) is "to remove judicial discretion when sentencing sex offenses generally by requiring that the sentences be run consecutively." *Commonwealth v. Stambaugh*, 327 S.W.3d 435, 438 (Ky. 2010).

Payne argues that, while KRS 532.110(1)(d) requires the multiple sentences involving multiple victims to be run consecutively, it allows for multiple sentences involving the same victim to be run concurrently. Specifically, Payne argues his sentences for offenses against S.B. could have been run concurrently to each other, but consecutively to the sentences imposed for offenses against A.D., M.W., and T.K. This formula would have resulted in a recommended sentence of eighteen years' imprisonment. However, our decision in *Stambaugh* forecloses Payne's argument.

Before addressing *Stambaugh*, we note Payne's citation to the unpublished decision of the Court of Appeals in *Johnson v. Commonwealth*, No. 2016-CA-000421-MR, 2018 WL 1779365 (Ky. App. April 13, 2018). In *Johnson*, the defendant was found guilty of multiple counts of sexual abuse involving two victims. *Id.* at *2. The trial court determined the sentence imposed on multiple counts involving Victim 1 were to run concurrently with each other, but consecutive to the sentences imposed on multiple counts

9

involving Victim 2. *Id.* We are not persuaded by the unpublished *Johnson* decision because our published decision in *Stambaugh* speaks directly to the issue. Further, the propriety of the defendant's sentence was not at issue in *Johnson*—so the Court of Appeals did not address it. *Id.*

In *Stambaugh*, the defendant was charged with four counts of sexual abuse relating to three separate victims. 327 S.W.3d at 436. The jury recommended each count run consecutively for a total sentence of forty years' imprisonment. *Id.* However, the trial court reduced the sentence to twenty years' imprisonment after applying the statutory cap contained in KRS 532.110(1)(c). *Id.* The Commonwealth appealed to determine whether the trial court properly applied the statutory cap. *Id.* at 437.

We determined there was a conflict between the statutory cap in KRS 532.110(1)(c) and the requirement that sentences for multiple sexual felonies against multiples victim be run consecutively. *Id.* at 438. In resolving the conflict, we determined the cap contained in KRS 532.110(1)(c) controls over the consecutive-sentence requirement in KRS 532.110(1)(d). *Id.* While the propriety of running each of Stambaugh's sentences was not specifically at issue, this Court thoroughly interpreted the requirements of KRS 532.110(1)(d):

> KRS 532.110(1)(d) provides, in essence, that a person convicted of two or more qualifying sexual felonies involving two or more victims must be sentenced to consecutive terms of imprisonment. There is no question that Stambaugh's four convictions for sexual abuse in the first degree are qualifying sexual felonies for purposes of KRS 532.110(1)(d). There is also no question that Stambaugh's crimes were committed against multiple victims, three to be exact, as is required for KRS 532.110(1)(d) to apply.

10

*Id.* at 437-38 (footnote omitted). Each of Stambaugh's convictions were required to run consecutively even though two counts related to a single victim. *Id.* "It is clear, then, that the legislature intended for sentencing judges to run sex offense sentences consecutively, but with a limit on the allowable aggregate sentence." *Id.* at 439.

We cannot conclude the trial court committed palpable error by failing to instruct the jury as to the effect of KRS 532.110(1)(d) on its discretion to recommend consecutive or concurrent sentences. As stated above, the purpose of KRS 532.110(1)(d) is to eliminate *judicial* discretion concerning whether to impose consecutive or concurrent sentences when a person is convicted of multiple sexual felonies involving multiple victims. *Stambaugh*, 327 S.W.3d at 438. The trial court was constrained to impose consecutive sentences for each count pursuant to KRS 532.110(1)(d) and *Stambaugh*. Therefore, any error in the jury instructions was immaterial.

Accordingly, the judgment of the Daviess Circuit Court is affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, and Lambert, JJ., concur. Thompson, J., concurs in result only.

11

COUNSEL FOR APPELLANT:

Kayla D. Deatherage
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas A. Van De Rostyne
Assistant Attorney General