RENDERED: DECEMBER 16, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0464-MR

CHARLES JUSTICE                                                      APPELLANT

               ON APPEAL FROM CAMPBELL CIRCUIT COURT
V.               HONORABLE JULIE REINHARDT WARD, JUDGE
                           NO. 18-CR-00357

COMMONWEALTH OF KENTUCKY                           APPELLEE

**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>**

A circuit court jury convicted Charles Dean Justice of four counts of first-degree sexual abuse, incest, attempted first-degree rape, attempted promotion of a sexual performance by a minor, distribution of matter portraying a sexual performance by a minor, promotion of a sexual performance by a minor, and being a first-degree persistent felony offender. The trial court imposed the 220 years' imprisonment sentence fixed by the jury.

Justice appeals the resulting judgment, raising the following trial errors:

1)  The trial court erred by allowing the Commonwealth to amend the indictment against him to include an attempted rape charge after granting a directed verdict on the rape charge;

2)  The trial court erred by failing to direct a verdict of acquittal on the attempted rape and sexual performance of a minor charges;

3) Palpable error occurred in the trial proceeding when the testimony of two medical experts named him as the perpetrator;

4) The trial court gave duplicitous instructions to the jury in violation of his right to a unanimous jury and his freedom from the threat of double jeopardy; and

5) The trial court imposed an illegal sentence.

Finding reversible error in the duplicitous jury instructions as asserted by Justice, we overturn the convictions for attempted rape and sexual abuse of E.W. We find no merit in the remaining assignments of error. Accordingly, we affirm the judgment in part, reverse in part, and remand the case to the trial court for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Brittney's child, C.J., told her that her biological father, Brittney's ex-husband, Charles Justice, had raped her. After Brittney relayed this to C.J.'s school counselor, a formal police investigation ensued. C.J. was interviewed at the Child Advocacy Center (CAC), and, after watching the interview, the lead detective went to the residence Justice occupied with his girlfriend, Emily, and her three daughters, E.W., L.W., and T.W., and two sons. While there, the detective disclosed to Justice what C.J. had said in her interview and collected from the residence some electronic devices and sex toys. The detective returned to the CAC, where Emily's three daughters were interviewed. The detective also interviewed Justice at the police station.

2

Meanwhile, the police received a tip from the National Center for Missing and Exploited Children of an apparently homemade image of child pornography depicting a very young child's vagina spread open by two adult fingers. The IP address for the image was traced back to Justice's residence. Detectives executed a search warrant for the electronics located in Justice's residence and requested a DNA test on the sex toys collected from the residence. The DNA test reported matches for both E.W. and Justice on samples taken from several of the sex toys. Detectives also showed the pornographic image to E.W.'s mother, and she identified the adult hand as Justice's hand as well as the bedsheets appearing in the background of the image. Justice's phone was found to have bookmarked the website where the image had been uploaded.

At trial, C.J., E.W., and L.W. testified regarding the abuse they had suffered. C.J. testified that Justice touched her with his hands and penis several times. She also testified he had instructed her to use sex toys and to perform oral sex on him. She testified that E.W. was present during some of these encounters and that Justice instructed E.W. to use the sex toys as well. C.J. also testified that Justice took photographs of her but that she did not realize what he was doing at the time. Finally, C.J. testified that Justice threatened to kill her if she told anyone.

E.W. testified that Justice also touched her with his hands several times. She also testified that Justice touched her vagina with his penis more than once, that she could feel it poking her, and that it hurt, but that his penis

3

never went inside her.  E.W. said Justice had asked her to use the sex toys and she did, but they were alone when it happened.

The jury found Justice guilty of attempted rape in the first-degree, four counts of first-degree sexual abuse, one count of incest, one count of promoting a sexual performance by a minor, one count of attempted promotion of a sexual performance by a minor, and one count of distribution of matter portraying a sexual performance by a minor.  The jury recommended a sentence of 220 years' imprisonment.  The trial court accepted the recommendation and sentenced Justice accordingly.

## II. ANALYSIS

### A. The trial court did not err in amending the indictment to include an attempted-rape charge at trial.

Justice argues the trial court erred when, after granting his motion for a directed verdict on the indicted charge of rape at the close of the Commonwealth's case-in-chief, it allowed the Commonwealth to amend the indictment to add the charge of attempted rape.  This issue is preserved, so we review the trial court's ruling for abuse of discretion, and we will only overturn the trial court's decision if it was arbitrary, unreasonable, or unsupported by law.[1]

After the Commonwealth closed its case-in-chief, Justice moved for a directed verdict on the rape count.  In her review of the Commonwealth's proof

---

[1] *Blane v. Commonwealth,* 364 S.W.3d 140, 150–51 (Ky. 2012), *abrogated on other grounds by Roe v. Commonwealth,* 362 S.W.3d 140 (Ky. 2015).

4

at this juncture, the trial court commented, "I just don't think the Commonwealth is going to be able to prove beyond a reasonable doubt the charge of rape." And the trial court concluded her thought by saying, "So [as to the rape count] the Commonwealth will not be able go forward on that charge." The Commonwealth immediately moved to amend the indictment to charge attempted-rape. After hearing more argument from both sides, the trial court granted the Commonwealth's motion to amend the indictment.

Kentucky Rule of Criminal Procedure (RCr) 6.16 states, "The court may permit an indictment, information, complaint or citation to be amended any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Justice cites to *Blane v. Commonwealth*, in which we held that the grant of a directed verdict precludes a later amendment of the indictment to add additional or different offenses, unless the directed verdict is first set aside.[2] *Blane* held that a trial court reversibly erred by allowing the Commonwealth to amend Blane's indictment after it had granted a directed verdict.[3] Blane was charged with trafficking marijuana within 1,000 yards of a school, but the Commonwealth failed to introduce any evidence of the proximity to a school.[4] So the trial court granted Blane's motion for a directed verdict on the trafficking within 1,000 yards of a school charge, stating the evidence as presented supported a general

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

5

trafficking charge.[5]   The trial court allowed the Commonwealth to amend the indictment to allow for the jury to consider Blane's guilt on the charge of trafficking in a quantity of marijuana greater-than-eight-ounces.[6]  We found reversible error because, after a directed verdict is granted, the defendant cannot be charged with an additional or different offense unless the directed verdict is first withdrawn.[7]

The Commonwealth responds that the present circumstances differ from those in *Blane* because the indictment in this case was amended to conform to evidence adduced during the Commonwealth's case-in-chief that amply supported submission to the jury on the lesser-included offense, attempted rape, without the introduction of any additional evidence.  The Commonwealth asserts that RCr 6.16 allows such amendment, that the amendment did not name a new or additional offense, and that Justice's defense—a complete denial of any sexual contact with the victim—was not prejudiced.  We agree with the Commonwealth.  While under *Blane,* the trial court erred by failing to have unequivocally withdrawn the directed verdict and then considered amending the indictment to allow for a lesser-included offense, the error is harmless because Justice suffered no prejudice by defending against a lesser-included offense of the originally indicted charge.

---

[5] *Id.*

[6] *Id.*

[7] *Id.* at 151 ("Furthermore, in this case, even if the trial court had not granted a directed verdict of acquittal, our decision would be the same because the indictment; as amended, charged an 'additional or different offense' in violation of RCr 6.16.").

6

**B. Justice was not entitled to a directed verdict of acquittal on the attempted rape charge or the charge of attempted production of a sexual performance by a minor.**

The Commonwealth has the burden of proving every element of an offense beyond a reasonable doubt, and the Commonwealth's failure to meet that burden entitles the defendant to a directed verdict on that offense. [8] On review of an alleged error for failure to grant a directed verdict, we ask if the entirety of the evidence would make it clearly unreasonable for a jury to find the defendant guilty.[9] We find Justice was not entitled to a directed verdict on the attempted rape charge because a reasonable jury could conclude that he attempted to rape E.W. Likewise, he was not entitled to a directed verdict on the attempted production of a sexual performance by a minor charge because a reasonable jury could conclude that he took a substantial step toward directing C.J., a minor, in a sexual performance.

First-degree attempted rape occurs when the perpetrator takes a substantial step toward engaging in sexual intercourse with a person incapable of consent because the victim is under the age of 12.[10] A substantial step is defined as an act that leaves no reasonable doubt as to the perpetrator's intention to commit the crime that he is charged with attempting.[11] So a directed verdict in this case should have only been granted if there was not

---

[8] *Perkins v. Commonwealth*, 694 S.W.2d 721, 722 (Ky. App. 1985).

[9] *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

[10] KRS 510.040; KRS 506.010.

[11] KRS 506.010(2).

even the slightest evidence that Justice took a step toward having sexual intercourse with E.W., a person under the age of 12. At the close of the Commonwealth's case, Justice moved for a directed verdict on the attempted rape charge. The trial court denied the motion. Justice argues that the Commonwealth failed to show even a scintilla of evidence that he attempted to rape E.W., so the trial court erred by denying his motion.

An examination of the evidence presented by the Commonwealth justifies our holding that a reasonable jury could conclude Justice attempted to rape E.W. E.W. testified that, on more than one occasion, Justice touched his penis to the outside of her vagina. This alone is enough for a reasonable jury to conclude that he attempted to rape her. As Justice points out, E.W. also testified that Justice's penis did not go inside her, and she made many conflicting statements, including that she did not feel Justice's penis and it did not hurt her. While these statements by E.W. are evidence consistent with the absence of penile penetration, they are not inconsistent with a reasonable belief that Justice attempted to rape E.W. And the evidence was sufficient for the jury to reasonably find attempted rape had occurred based on E.W.'s testimony. So Justice was not entitled to a directed verdict on the attempted rape charge.

Similarly, Justice was not entitled to a directed verdict on the charge of attempt to use a minor to promote a sexual performance. Justice was charged with two counts of using a minor in a sexual performance. One count involved E.W., and the other involved C.J. To prove these charges, the Commonwealth

8

presented evidence that Justice had taken a sexually explicit picture of E.W. and uploaded it to a pornographic website. However, there was no proof that Justice uploaded a sexually explicit picture of C.J. to the internet. There was only C.J.'s testimony that she believed that Justice took pictures of her. After the Commonwealth closed its case, Justice moved for a directed verdict on the promoting sexual performance of a minor charge involving C.J. because the Commonwealth presented no evidence that Justice directed or promoted C.J.'s use of sex toys. The defense stated that while C.J. had testified that Justice told her to put the sex toy "in there," she ultimately declined to do so. The trial court granted the motion because the Commonwealth presented no evidence that Justice completed the act of directing C.J. to promote a sexual performance. Instead, the trial court found there was enough evidence for a reasonable jury to conclude that Justice had attempted to promote sexual performance. The defense made no further objection, so we review for palpable error.[12]

Under KRS 531.320, "A person is guilty of promoting a sexual performance by a minor when, knowing the character and content thereof, he produces, directs or promotes any performance which includes sexual conduct by a minor." At trial, C.J. testified that Justice provided her with sex toys and instructed her to place it in "there," implying her vagina. C.J. told the jury that she held the toy but told Justice "no" when he asked her to place it in "there."

_____

[12] *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006).

9

C.J. further testified that she thinks Justice took pictures of her at some point. The jury also heard testimony that Justice had uploaded a picture of E.W. It would not be unreasonable for the jury to conclude Justice was planning to do the same with the pictures of C.J. So a reasonable jury could conclude that Justice took a substantial step to use C.J. in an attempted promotion of a sexual performance of a minor. Thus, the trial court did not err in denying the defense's motion for a directed verdict.

### C. We find the trial court erred by allowing medical experts to testify that E.W. had identified Justice as the perpetrator, but reversal is not warranted.

Justice argues that he was substantially prejudiced by Dr. Anderson's and Dr. Segal's testimony that E.W. and C.J. had identified him as the perpetrator. This issue is unpreserved, so we will review for palpable error under RCr 10.26 and only reverse if the error resulted in manifest injustice, an error of such magnitude that shocks the conscience.[13]

At trial, Dr. Anderson testified to her medical examination of E.W. In a single statement, as she was reading her office notes, she stated that E.W. had identified her father as her abuser. Dr. Segal's testimony was similar. He read from his medical report that identified Justice as C.J.'s abuser and that C.J. had said Justice had tried to touch her vagina, play with sex toys, and cause oral-penile contact. At Justice's request, both these medical reports were later

---

[13] *Hoff v. Commonwealth*, 394 S.W.3d 368, 370 (Ky. 2011).

10

shown to the jury in a redacted form that deleted the identity of the alleged perpetrator.

While the Commonwealth encourages us to find this issue waived, we disagree. In *Tackett v. Commonwealth*,[14] we found that the defendant had waived the right to argue palpable error in the introduction of a medical examiner's report when the defense specifically told the court it had no objection to the introduction.[15] The same circumstances do not exist here. Defense counsel heard the testimony by Dr. Anderson and Dr. Segal. While defense counsel did not object, it did ensure the hearsay was redacted from the version the jury would use during deliberations. We cannot say this was analogous to an express statement to the trial court that counsel has no objection. And we find the issue unpreserved, but not waived. So, we will now proceed with our review for palpable error.

Generally, out-of-court statements offered for their truth are inadmissible under the rule against hearsay.[16] KRE 803(4) provides an exception for some of those statements to be admitted if the statement was made for a medical purpose or treatment. However, in *Colvard v. Commonwealth*,[17] we made clear that this Court will no longer recognize an exception to the hearsay rule that allows medical providers to testify to statements by the victim that identify the

---

[14] 445 S.W.3d 20 (Ky. 2014).

[15] *Id.* at 29.

[16] Kentucky Rule of Evidence (KRE) 803.

[17] 309 S.W.3d 239 (Ky. 2010).

11

defendant as the alleged perpetrator if those statements are unnecessary to the medical treatment of the victim.[18] The error here is clear.[19] The testimony identifying the alleged perpetrator in this trial was in no way related or needed to explain why the doctors were seeing or treating E.W. and C.J.[20] Because the statements were not related to the medical diagnosis or treatment of the children, we find it was error for the statements to be admitted.

However, we find palpable error did not occur. In *Hoff v. Commonwealth,* we found reversible error occurred when a doctor's testimony revealed to the jury that the victim had identified Hoff as her abuser and went on to describe many details of the abuse.[21] For example, the doctor told the jury that the victim had identified Hoff as the perpetrator, had told her teacher about the abuse, and had written about it in her diary.[22] The doctor also relayed information about Hoff taking the victim to meet an unnamed man.[23] Further,

---

[18] *Id.* at 247 ("We no longer recognize a special exception to the hearsay rule which allows medical providers to testify in court to the hearsay statements of a victim of sexual offenses which identify the alleged perpetrator because that identification is not pertinent to the medical treatment being provided.").

[19] See *B.B. v. Cabinet for Health & Fam. Servs.* No. 2020-SC-0488-DG, ___S.W.3d___, 2021 WL 3828504, at *2 (Ky. Aug 26, 2021), where we held that it was error for testimony to be admitted where child did not seek out treatment herself, so her identification was not motivated by her desire to get treatment, and identification of father as perpetrator was not necessary for therapist to diagnose and treat child's post-traumatic stress disorder.

[20] *Hoff*, 394 S.W.3d at 374 ("Generally, in a child sex abuse case, only those statements that relate to the patient's physical injuries and what caused them are pertinent to treatment and diagnosis under KRE 803(4).").

[21] *Id.* at 375.

[22] *Id.* at 373.

[23] *Id.*

12

an unredacted version of the doctor's medical report went back with the jury.[24] We find the circumstances here to be different from those in *Hoff*. While both E.W. and C.J.'s doctor told the jury that the children had identified Justice as their abuser, each child also testified at trial to the same thing. Additionally, the reports that the jury saw during their deliberations were redacted so that they did not say the children had identified Justice as the person who had abused them. Justice argues the identifying statements prejudicially bolstered E.W. and C.J.'s testimony, which is likely true. But while some prejudice may have resulted, we do not find it to be of the egregious nature that shocks the conscience.

**D. Jury instructions 4 and 5 resulted in reversible error.**

Justice argues that jury instructions 4, 5, 7, and 8 violated his right to a unanimous verdict and the double-jeopardy clause of the Fifth Amendment to the United States Constitution. This issue is unpreserved, so we will review for palpable error under RCr 10.26 and reverse only if the error resulted in manifest injustice, an error of such magnitude that shocks the conscience.[25] If the jury instructions created a unanimous-jury-verdict problem, reversal is required because defendants are guaranteed the right to a unanimous verdict by the Kentucky Constitution.[26] Here, we do not agree with all the arguments

---

[24] *Id.* at 372.

[25] *Hoff*, 394 S.W.3d at 370.

[26] *King v. Commonwealth*, 554 S.W.3d 343, 349 (Ky. 2018).

13

Justice raises, but we find that reversible error occurred as to jury instructions 4 and 5.

This Court has long held that:

> [w]hether the issue is viewed as one of insufficient evidence, or double jeopardy, or denial of a unanimous verdict, when multiple offenses are charged in a single indictment, *the Commonwealth must introduce evidence sufficient to prove each offense and to differentiate each count from the others, and the jury must be separately instructed on each charged offense.*[27]

A unanimous jury verdict problem often arises when a jury instruction is satisfied by multiple criminal acts.[28] When multiple acts of conduct for which the defendant could be convicted are not sufficiently distinguished in the jury instructions, it becomes unclear on which conduct the jury is convicting the defendant.[29] As a result, when a conviction is returned, we cannot be assured that 12 jurors all agreed that the same conduct warranted a conviction.[30] This violates a defendant's right to an unanimous verdict.[31] And we have repeatedly held that "a general jury verdict based on an instruction including two or more separate instances of a criminal offense whether explicitly stated in the

---

[27] *Id.* at 353-54.

[28] *Johnson v. Commonwealth*, 405 S.W.3d 439 (Ky. 2013).

[29] *King*, 554 S.W.3d at 355 ("And, upon closer look, we must ask this: if an appellate review problem is at issue because neither the appellate court nor the defendant can determine from the verdict what criminal act he was convicted of, then how can we expect the jury presented with the same multiplicity of identical instructions and verdict forms to know what crime it is convicting the defendant of? If the defendant and the appellate court cannot sort it out, then neither can the jury.").

[30] *Id.*

[31] *Id.*

instruction or based on the proof—violates the requirement of a unanimous verdict."[32]

Further, jury instructions that fail to meet the unanimity requirement are usually accompanied by a double-jeopardy violation.[33] If the conduct is not distinguished in the jury instructions, but evidence would allow a reasonable jury to find the defendant guilty of two different crimes, there is no way to know the jury did not use the same conduct to satisfy both convictions. So, the jury instructions must require the jury to distinguish the conduct forming the basis of conviction to ensure that all twelve jurors agree that a specific act warrants a conviction and so that the jury does not punish the defendant for the same conduct twice.

Here, jury instructions 4 and 5 failed to describe sufficiently distinguishable conduct to ensure 12 jurors all agreed to a specific set of facts indicating that Justice had sexually abused E.W. Jury instruction 4 read:

> You will find the Defendant guilty of Attempted Rape First Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all the following:
>
> A) That in this county, between the dates of January 2015 and October 30, 2017, and before the finding of the Indictment herein;
>
> B) That under the circumstances as he believed them to be, the Defendant intentionally *took a substantial step to engage in sexual intercourse with EW;*
>
> C) That the attempted sexual intercourse with E.W. occurred two or more times over the above listed time period; AND

---

[32] *Johnson*, 405 S.W.3d at 439.

[33] *King,* 554 S.W.3d at 356-57.

15

D) That, at the time of the attempted intercourse, EW was less than 12 years of age.

Jury Instruction 5 was the same as above except Section B read, "The Defendant engaged in sexual contact with E.W." Sexual contact was defined as "any touch of the sexual or intimate parts of a person for the purpose of gratifying the sexual desire of either party." Sexual intercourse was described as "sexual intercourse in its ordinary sense. Sexual intercourse occurs upon any penetration, however slight; emission is not required."

In *Johnson v. Commonwealth*, we explained that sexual abuse is a lesser-included offense of rape.[34] So when the Commonwealth introduces at trial evidence of both offenses, the jury instructions must sufficiently distinguish the phrases "sexual contact" and "sexual intercourse" to ensure the jury does not use the same conduct to support a conviction under both charges.[35] Here, the jury heard E.W. testify that Justice touched her inappropriately with his hands at two different residences, but she also testified that Justice's penis touched her vagina at both those residences as well. Under the above instructions, the jury could find Justice committed attempted rape because Justice poked E.W. with his penis, and a reasonable jury could conclude such

---

[34] *Johnson v. Commonwealth*, 864 S.W.2d 266, 277 (Ky. 1993) ("We first observe . . . that sexual abuse in the first degree is a lesser-included offense of both rape in the first degree and sodomy in the first degree . . . . The instruction, couched in general terms of 'sexual contact' without differentiating the act from those acts constituting rape and sodomy, permitted the jury to find Johnson guilty twice for the same act, e.g., intercourse constituting rape and intercourse constituting sexual contact and, therefore, sexual abuse.").

[35] *Mash v. Commonwealth*, 376 S.W.3d 548, 559 (Ky. 2012).

an act was a substantial step toward having sexual intercourse with a person under the age of 12. However, those same facts could also support a finding that Justice sexually abused E.W. because a jury could reasonably conclude that Justice touched E.W. with his penis for the purpose of sexual gratification. The jury instructions did not distinguish between these instances nor describe the actual conduct that took place. So we cannot be sure what conduct the 12 jurors agreed constituted sexual abuse and what acts it agreed constituted attempted rape. Therefore, Justice may have been convicted twice for the same conduct.

In contrast to jury instructions 4 and 5, instructions 7 and 8 did not violate double jeopardy. Jury instruction 7 read:

> You will find the Defendant guilty of *Incest* under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A) That in this county, between the dates of January 2015 and May of 2016 and before the finding of the Indictment herein;
>
> B) The Defendant engaged in *deviate sexual intercourse* with CJ;
>
> C) That CJ was his daughter;
>
> D) That the Defendant knew that CJ was his daughter; AND
>
> E) That, when the deviate sexual intercourse occurred, CJ was less than twelve years of age.

Jury instruction 8, the instruction for sexual abuse of C.J, was the same except Section B read "The Defendant engaged in sexual contact with CJ" and did not require the jury to find that Justice knew C.J. was his daughter. "Deviate sexual intercourse" was defined as "any act of sexual gratification

17

involving the sex organs of one person and the mouth or anus of another."
Sexual contact was described as "any touch of the sexual or intimate parts of a
person for the purpose of gratifying the sexual desire of either party."

These instructions did not create a double-jeopardy violation. When one
crime requires proof that the other does not, no double-jeopardy violation
occurs.[36] We have explained that the crimes of rape and incest each require
proof of a fact that the other does not, and therefore, a defendant may be
convicted of each of these crimes for a single act without violating the Fifth
Amendment protection against double jeopardy.[37] Likewise, the crimes of
incest and sexual abuse, a lesser-included offense of rape, each require proof of
a fact that the other does not. Specifically, incest requires proof of
relationship, whereas sexual abuse does not; sexual abuse requires proof of
age, whereas incest does not.[38] So, convictions under jury instructions 7 and 8
did not violate Justice's right to not be convicted for the same conduct twice.

Justice also takes issue with the "two or more times" language in jury
instructions 4, 5, and 8. He argues the instructions violated unanimity
requirements because the phrase "two or more times" did not sufficiently
distinguish his acts. However, we find the jury instructions were sound in this
regard.

---

[36] *Johnson v. Commonwealth*, 292 S.W.3d 889, 896 (Ky. 2009), *overruled on other grounds by Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020) (citing *Blockburger v. United States*, 284 U.S. 299, 302-03 (1932)).

[37] *Id.*

[38] *See* KRS 530.020; KRS 510.110.

18

The unanimity problem as previously described often arises in cases where a child has been a victim of multiple sex offenses. It becomes difficult for the Commonwealth to offer proof that differentiates each instance of abuse. So the legislature enacted KRS 501.100.[39] This statute allows the defendant to be convicted of an offense against a victim based on a continuing course of conduct. The statute often avoids the unanimity problem because the jury does not have to agree which two or more instances occurred. It only must unanimously decide that, on two or more occasions, the defendant engaged in the culpable conduct. For example, if there were three instances presented to the jury, so long as all 12 jurors agreed that at least two of those instances occurred, a conviction could stand, despite all 12 jurors not agreeing to the same two.

Under KRS 500.100, a continuing course of conduct is defined as when the culpable conduct happened two or more times. That is the language the jury instructions used, so they were sufficient in this regard. So, had the jury instructions sufficiently distinguished the different conduct required for attempted rape, sexual abuse, and incest here, they would not otherwise fail for containing the "two or more times" language.

**E. Justice's sentence exceeded the statutory cap of KRS 532.110.**

Justice argues he was illegally sentenced. The jury recommended a sentence of 220 years' imprisonment, and the trial court accepted that

---

[39] *Elam v. Commonwealth*, 500 S.W.3d 818, 826 n.8 (Ky. 2016).

recommendation. Justice contends this does not align with the 70-year statutory cap imposed by KRS 532.110(c). The Commonwealth argues that the statutory cap should not be enforced because the legislature intended for the statutory cap not to apply to defendants like Justice. For reasons explained below, we agree with Justice.

KRS 532.110 governs concurrent and consecutive sentences. KRS 532.110(c) requires sentences to "not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed or 70 years." But KRS 532.110(d) requires that when a defendant is charged of two or more sex crimes involving two or more victims, his sentences are to run consecutively. As is clear from the text of the statutory provisions, section (c) restricts the length of potential sentences while section (d) contains no such restriction.

In *Commonwealth v. Stambaugh*,[40] we reviewed the apparent conflict between these two sections.[41] We explained that while KRS 532.110(d) requires that the sentences for certain offenders must run consecutively, the total length of the sentence still cannot exceed the express statutory caps of section (c).[42] The majority reasoned that even though section (d) of KRS

---

[40] 327 S.W.3d 435 (Ky. 2010).

[41] *Id*. at 438.

[42] *Id*. at 439.

532.110 was added after section (c), it was only enacted to prevent light sentencing of sex offenses, and the express, specific cap within (c) controls.[43]

The dissent in *Stambaugh* disagreed with the majority's analysis and maintained that KRS 532.110(d) controlled.[44] The dissent asserted that the legislature intended the sentences of defendants convicted of two or more sex offenses involving two or more victims to not be subject to the 70-year cap imposed by section (c).[45] To support its position, the dissent cited to the canon of statutory construction that a more specific statute controls over the more general statute.[46] It asserted that KRS 532.110(d) applied only to mandatory consecutive sentences for particular sex offenders.[47] So it was more specific in nature than KRS 532.110(c)'s general cap.[48] The dissent also argued statutory interpretation principles require that when two provisions conflict, the later-enacted statute takes precedence, and thus because (d) was added to the statute after (c), (d) controlled.[49]

The Commonwealth asks us to revisit the majority's holding in *Stambaugh* and instead to adopt the dissent's position. However, we decline to do so. This Court's primary rule of statutory construction is to determine the

---

[43] *Id.*

[44] *Id.* at 441.

[45] *Id.* at 442.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] *Id.*

intent of the legislature.[50] But "[i]t is a generally recognized rule of statutory construction that when a statute has been construed by a court of last resort and the statute is substantially reenacted, the Legislature may be regarded as adopting such construction."[51] Further, "the failure of the legislature to change a known judicial interpretation of a statute [is] extremely persuasive evidence of the true legislative intent. There is a strong implication that the legislature agrees with a prior court interpretation when it does not amend the statute interpreted."[52] As the dissent in *Stambaugh* notes, the majority's reasoning in that case does not follow our statutory-interpretation principles, but instead draws conclusions from assumptions that lack support.[53] But because we must assume the legislature is aware of our interpretation and has not since changed the statute, we affirm *Stambaugh.*

We are constrained by our deference to the legislature's acquiescence in our interpretation. So we apply *Stambaugh* and hold that KRS 532.110(d) controls over KRS 532.110(c) in cases where the defendant stands convicted of multiple sex crimes involving multiple victims. Justice was convicted of two or more sex offenses involving two victims. The controlling statutory sentencing cap is 70 years. The trial court erred in imposing the jury's recommended 220-year sentence.

---

[50] *Livingood v. Transfreight, LLC,* 467 S.W.3d 249, 256 (Ky. 2015).

[51] *Commonwealth v. Trousdale,* 181 S.W.2d 254, 256 (Ky. 1944).

[52] *Rye v. Weasel,* 934 S.W.2d 257, 262 (Ky. 1996).

[53] *Id.* at 441.

## III. CONCLUSION

In conclusion, we reverse Justice's convictions for attempted rape and sexual abuse of E.W. The remaining convictions stand. Before the statutory cap is applied, Justice still faces a 150-year sentence as recommended by the jury. Accordingly, we remand the case to the trial court for further proceedings consistent with this opinion.

All sitting. Conley, Hughes, Lambert, Nickell, and VanMeter, JJ., concur. Keller, J., concurs in part and dissents in part by separate opinion.

KELLER, J., CONCURRING IN PART AND DISSENTING IN PART: I agree with all aspects of the majority's well-written opinion, other than its analysis of the alleged unanimity error. To be consistent with my prior dissents in part in *King v. Commonwealth*, 545 SW.3d 343, 365–74 (Ky. 2018) (Keller, J., concurring in part and dissenting in part), and most recently in *Gartin v. Commonwealth*, No. 2019-SC-0628-MR, 2021 WL 1133625, *4–5 (Ky. Mar. 25, 2021) (Keller, J., dissenting in part and concurring in result only in part), duplicitous jury instructions do not violate a defendant's right to a unanimous verdict.

Our constitution and our prior case law have never required that juries unanimously agree on a particular set of facts to support a conviction. In fact, our case law has held just the opposite. For decades, the Court held steadfast to a constant principle: when multiple theories of a crime are supported by the evidence, multiple-theory instructions are sufficiently protective of the right to a unanimous verdict. *See Wells v. Commonwealth*, 561 S.W.2d 85, 88 (Ky.

23

1978) ("It was sufficient that each juror was convinced beyond a reasonable doubt that the defendant had committed the crime . . . as . . . defined by statute."); *Harris v. Commonwealth*, 793 S.W.2d 802 (Ky. 1990), *overruled on other grounds by St. Clair v. Commonwealth*, 451 S.W.3d 597 (Ky. 2014)); *Davis v. Commonwealth*, 967 S.W.2d 574 (Ky. 1998). It is only when one of the alternative theories is unsupported by the evidence that these multiple-theory instructions become a unanimity error. *See, e.g., Hayes v. Commonwealth*, 625 S.W.2d 583 (Ky. 1981); *Commonwealth v. Whitmore*, 92 S.W.3d 76 (Ky. 2002).

It is the unanimity of the *verdict* that is integral to our constitutional analysis, and it is the unanimity of the *verdict* that is a matter of due process. As Justice Cunningham stated in his dissent in *Johnson v. Commonwealth*, "[w]e are requiring juries to be unanimous on matters that the unanimous verdict requirement never anticipated." 405 S.W.3d 439, 461 (Ky. 2013) (Cunningham, J., dissenting). The constitution only requires a unanimous jury find that the prosecution has proven each element of the offense. The jury in this case did so, and thus Justice's constitutional right to a unanimous verdict was satisfied.

COUNSEL FOR APPELLANT:

Shannon Dupree
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General

Kristin L. Condor
Assistant Attorney General
Office of the Solicitor General